[Civil No. 836.  Filed March 26, 1904.]

[76 Pac. 592.]

## ALLEN T. BIRD and CALLA N. BIRD, Plaintiffs and Appellants, v. ADOLPHUS H. NOON, Appellee.

1. DEEDS — DESCRIPTIONS — COURSES AND DISTANCES — CONTROLLED BY MONUMENTS.—Where a deed conveying a part of a town lot described the part conveyed as being one hundred and twenty-four feet square, and a deed conveying an adjoining part of the same lot, while describing it as having a frontage that would have included a part of the land conveyed by the first deed, also stated that it began at a certain corner and ran to the corner of the part first conveyed, the monuments thus designated controlled the courses and distances, and no part of the land conveyed by the first deed was included in the second.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Santa Cruz. George R. Davis, Judge.  Reversed.

The facts are stated in the opinion.

Barnes & Martin, for Appellants.

Thomas D. Bennett, for Appellees.

DOAN, J.—The appellants brought an action of ejectment for the possession of a certain lot in Nogales townsite, in

Santa Cruz County, Arizona, claiming under a deed executed by the mayor as townsite trustee. The appellee based his defense on a deed of the same date from the same grantor to a lot adjoining. From a judgment for the defendant, the plaintiffs appeal.

The land in dispute is a strip about two feet wide at the south end, and about nineteen feet wide at the north end, that is claimed by each party to have been conveyed by the aforesaid deeds. The question is not one of adverse possession, but of the location on the earth's surface of the true lines of the paper title to the two lots. It appears from the evidence that the premises comprising the two lots were formerly held as a possessory right by a Mrs. Hendrix, and were described as lot 6 in block 10, as marked on Chillson's map of the town of Nogales. On October 5, 1898, Mrs. Hendrix conveyed to the appellant Mrs. Bird a part of lot 6, described as follows: "Beginning at the corner of West Avenue and Crawford Street, . . . being the southwestern corner of lot 6 in block 10; . . . thence easterly along the northern line of Crawford Street one hundred and twenty-four feet to a point; thence northerly by a line parallel to the eastern line of West Avenue one hundred and twenty-four feet to a point; thence westerly by a line parallel to Crawford Street one hundred and twenty-four feet to West Avenue; and thence along the eastern line of West Avenue one hundred and twenty-four feet to the place of beginning." The appellant thereafter held the premises under such deed, and occupied the house thereon as a home. In October, 1899, the same grantor conveyed to the appellee the remainder of the lot, described as follows: "Commencing at the southwest corner of the H. K. Chenoweth property on the north side line of Crawford Street, . . . thence west on said north side line of Crawford Street, about 44 feet to the southeasterly corner of the lot or parcel of land conveyed by the said party of the first part to Calla N. Bird under date 5th October, 1898, thence northerly adjoining the east line of said lot and parallel with West Avenue one hundred and sixty-four feet, thence east adjoining property of Nina K. Avery about 44 feet, thence south . . . one hundred and sixty-four feet to point of beginning"—from which date he held the lot thereunder, and moved into the house situated thereon, and occupied it as a home. The ground composing

the town of Nogales was entered in 1898 as a townsite by the mayor in trust for the use and benefit of the occupants thereof, and, after patent was issued, the mayor, as trustee, caused the same to be surveyed into lots, blocks, streets, and alleys, and caused a plat thereof to be made, which was on the 12th of December, 1899, submitted to and approved by the mayor and town council of Nogales, and thereafter by the board of supervisors of Santa Cruz County, and was recorded in the office of the county recorder. Under this survey that part of lot 6 in block 10 formerly conveyed to Mrs. Bird was designated on the town plat as lot No. 11 in block No. 6, and that part of lot 6 in block 10 that had been conveyed to the appellee, Noon, was designated on such plat under this survey as lot No. 9 in block No. 6. On the application of the two parties, as occupants of the lots on which they were then living, the mayor of Nogales, as trustee of the townsite, executed on December 30, 1899, to the appellant and the appellee, severally, deeds to these two lots, and described them therein as follows: To the appellant, Mrs. Bird: "All that certain lot of ground beginning at the northeast corner of Crawford and West streets; running thence easterly along Crawford Street, one hundred and twenty-four feet to a point; thence northerly one hundred and twenty-four feet to a point; thence westerly one hundred and twenty-four feet to a point on the eastern side of West Street; and thence southerly along said eastern side of West Street one hundred and twenty-four feet to the point of beginning; and being lot number eleven (11) in block number six (6) as appears from the field-notes and map of the surveys made and executed by William Bradford, and approved by the mayor and town council of the said town of Nogales, on the twelfth day of December, A. D. 1899." To the appellee, A. H. Noon: "All that certain lot of ground, beginning at the southwest corner of lot of Chenoweth on the north side of Crawford Street; thence westerly along said Crawford Street forty-seven feet to the line of lot of Mrs. Calla N. Bird; thence northerly along the line of said lot of Mrs. Bird, and the same protracted, one hundred and sixty-four feet; thence easterly about forty-nine feet to a set post on the line of lot of Joseph Pascholy; and thence southerly one hundred and sixty-four feet to the place of beginning; being lot number nine (9) in block number six (6) as delin-

eated on the map of said town of Nogales, made by Wm. Bradford and approved by the mayor and town council of said town on the 12th day of December, A. D. 1899.'' The town plat, as introduced in evidence by appellee, shows lot 11 in block 6 to be one hundred and twenty-four feet on each of its four sides, and shows lot 9 in block 6 to have a frontage of 43.51 feet, and to be at its extreme rear twenty-five feet in width, following along the east line of lot 11.

There was some oral testimony as to the erection of a fence between the two lots by the appellee, with the consent of the appellants, immediately prior to the execution of the deeds by the mayor, trustee; but the appellee did not plead any estoppel by reason of the establishment of an agreed boundary-line, nor has he established such by any substantial evidence. The undisputed testimony of the appellants in the lower court was that they at no time knew the exact location of the eastern line of their lot, according to either the deed from Mrs. Hendrix or the deed from the townsite trustee. The lower court admitted the testimony of the appellee relative to the occupancy of the ground on the eastern side of the fence above mentioned for the purpose of showing the occupancy of the ground in dispute by the appellee at the time he applied for and received the deed from the mayor as trustee of the townsite. This occupancy being by permission of the appellants, and not continuing for a sufficient length of time to establish any rights under adverse possession, it is not necessary to consider this question any further than to determine that the two parties to this action were, at the time of applying for and receiving the deeds, grantees of the possessory right to, and were residing upon and occupying, substantially the premises conveyed by the townsite trustee to them, and were for that reason eligible as grantees in said deeds. This is not an equitable action to correct a deed by reason of mistake in boundaries or description, but is simply an action to determine the legal rights of parties holding under recorded deeds. The appellee, in his answer in the lower court, in support of his claim to the right of possession under the title furnished by such conveyance to him, averred that the mayor, trustee, on his application, issued to him a deed in fee simple to the premises, and that, no appeal having been taken from the decision of the said mayor, trustee, all the matters and things

thought necessary to be considered having been considered by said mayor, trustee, are *res adjudicata* as to these plaintiffs (appellants), and they are, in equity and good conscience, estopped from denying the action or judgment of said mayor, trustee. This same doctrine of estoppel will apply equally to the appellee, by whom it was invoked, and leaves us to determine in this action solely the legal rights of the parties holding under the aforesaid deeds.

Lot No. 11 having been deeded absolutely one hundred and twenty-four feet square, according to the official map, and the official map, as placed in evidence, being in accordance with such description, conveys an absolute title to that property. The deed for lot No. 9, while it calls for a frontage of forty-seven feet, limits the measurement of frontage by the direct statement that it commences at the southwest corner of the Chenowcth lot, a fixed point, and runs thence forty-seven feet to the southeast corner of Mrs. Bird's lot, a fixed point; and, on the well-settled rule that courses and distances must yield to fixed monuments and natural objects, the two corners of the lots referred to must control, whatever the frontage may be found to be.

It is urged by the appellee that the judgment of the lower court, being in effect a finding of fact, will not be disturbed on appeal if there is any substantial evidence to sustain it. The record shows no findings of fact, and it appears that the lower court arrived at its conclusion by attempting to reconcile the description of the two deeds on the theory that, by the courses and distances as given, part of the ground (that in dispute) must have been conveyed by both deeds. The description in the trustee's deed to Mrs. Bird, the appellant, called for one hundred and twenty-four feet square, without being limited in either direction by any fixed monuments. The only restriction on such description was the reference to the lot as appearing on the map of the townsite, and that map designated the lot exactly as described—"one hundred and twenty-four feet on each of its four sides." This fully supported the terms and description in the trustee's deed, which, being plain and unambiguous, left nothing to be construed by the court, and rendered the deed a conveyance absolute to that ground, entitling the plaintiff to possession thereunder, unless there was a better title shown by the defendant. The deed

to the appellee for lot 9 limited the frontage, given as forty-seven feet, by the designation of the two fixed points, and further limited or modified the description of the lot by a reference to the lot "as delineated on the map of said town," which town map "shows lot nine in block six to have a frontage of forty-three and $^{51}/_{100}$ (43.51) feet" from the southwest corner of the Chenoweth lot "to the line of Mrs. Bird," and to be at its extreme rear twenty-five feet in width, "following along the east line of lot eleven," as called for in the trustee's deed thereto, as appearing on said map, and as contended for by the appellants in this action. The deed to the defendant thus affords no evidence to weaken or controvert that of the plaintiffs, which would be necessary in order to support a judgment for the defendant.

The judgment of the district court is reversed, and the case is remanded to that court, with directions to enter judgment for the plaintiffs in accordance with the views herein expressed.

KENT, C. J., and SLOAN, J., concur.