640 P.2d 169

**QUALITY PLASTICS, INC., an Arizona Corporation, Appellee,**

v.

**Patrick B. MOORE and Jeanette Moore, husband and wife, Appellants.**

No. 15334.

Supreme Court of Arizona, In Division.

Dec. 30, 1981.

Rehearing Denied Feb. 2, 1982.

Barry B. Cline, Prescott, for appellants.

Favour, DePasquale, Moore & Schuyler by John R. Perry, Jr., and John B. Schuyler, Jr., Prescott, for appellee.

HAYS, Justice.

This is an appeal from a summary judgment in favor of the appellee, Quality Plastics, Inc. (Quality), quieting title to a small parcel of land located in the city of Prescott. We have jurisdiction pursuant to 17A A.R.S. Civil Appellate Procedure Rules, Rule 19(e).

The property over which the parties claim ownership is situated in Block 21 of what is known as the Dameron Park Addition to the City of Prescott. Block 21 was originally owned and platted in 1926 by Quality's predecessor in interest, Henry A. Dameron. Since 1926, Block 21 has been subdivided into a number of smaller parcels by virtue of various conveyances. The Yavapai County Assessor's map purports to show the various parcels into which Block 21 has been subdivided. (See accompanying illustration; the block number is enclosed within a circle whereas the parcel numbers are enclosed within rectangles.) The appellants Moore own the parcels designated by the assessor as Parcels 19, 20 and 21. Quality owns the parcel designated as Parcel 23. The disputed property has been designated as Parcel 59 (shaded area on map).

In 1955, Dameron conveyed all unsold parcels in Block 21 to Henry Dameron, Jr., who in turn conveyed a parcel of the land to Leon and Grace Sexton in 1958. The description of this parcel (Parcel 23 on the assessor's map) stated in pertinent part:

"[T]hence West 350 feet to the Southwest corner of Blake Tract ...; thence North along West line of said Blake Tract *105*

*feet to Southeast corner of the Casady Tract* ... thence West along South line of said Casady Tract to a point on East right-of-way line of Third Street; ..." (Emphasis added).

It is this description which Quality contends included the disputed property. The correct distance from the southwest corner of the Blake Tract to the Casady Tract is 150 feet. Nevertheless, the description of "105 feet" appears in a 1959 conveyance from Sexton to Francis and Bernece Heckethorn, in a 1960 conveyance from Heckethorn to Fred and Alva Perry, and finally, in the 1971 conveyance from Perry to Quality Plastics.

As a result of this discrepancy, it appeared as if an unconveyed strip of property existed between the Casady Tract and the property designated as Parcel 23. In 1964, the Yavapai County Assessor's Office apparently noticed this discrepancy and plotted this strip as Parcel 59 on its map. On January 31, 1964, the assessor's office issued a tax assessment on Parcel 59 and assessed the tax against Henry Dameron, Jr.

Dameron failed to pay the taxes and the property was sold by the Yavapai County Treasurer at a tax sale on January 25, 1965. A Certificate of Purchase was issued to the vendee, Emmet L. Kaiser, Moores' predecessor in interest. Kaiser paid the taxes for the next five years and applied for a treasurer's deed pursuant to A.R.S. § 42–455, *et seq.* The treasurer's office, proceeding on the assumption that Dameron, Jr., was the owner of the property, notified Dameron pursuant to A.R.S. § 42–456 that a treasurer's deed had been applied for. Receipt of the notice signed by Dameron was received by the treasurer's office. Public notice was also given pursuant to A.R.S. § 42–457. On August 3, 1970, the Yavapai County Treasurer issued a deed to Kaiser which described the property, in part, as follows:

"Dameron Park Addition—All unsold parcels in Block 21, ... *less 3.50 A. to Sexton as 143/331* & less 1.46 to Perry 277/103 Sec. 33–2W. (*Parcels No. 113–4–19 & 113–4–59*)" (Emphasis added).

The reference to "less 3.50 A. to Sexton as 143/331" referred to the deed description in the Dameron, Jr.-to-Sexton conveyance which contained the discrepancy. The reference to "Parcels No. 113–4–19 & 113–4–59" referred to the assessor's parcel numbers.

Finally, on October 24, 1977, Kaiser conveyed the disputed property to appellants. Patrick Moore was aware that there was a cloud on the title but went ahead with the purchase, feeling he could secure good title to the property. Moore attempted to acquire a quitclaim for any interest Quality had in the property but Quality refused. Quality thereafter filed this action to quiet title to the disputed property and the Moores filed an answer and counterclaim seeking to quiet title in themselves. After cross-motions for summary judgment were submitted, the trial court awarded the property to Quality.

On appeal, the Moores argue that Quality's predecessor in interest, Sexton, acquired no interest in the parcel and that Moores' predecessor in interest, Kaiser, obtained good title by virtue of the tax sale and deed. Alternatively, the Moores contend that even if the tax deed is defective, they nevertheless have title to the property by virtue of A.R.S. §§ 12–524 and 12–527.

The first issue to be resolved is whether the 1958 conveyance from Dameron, Jr., to Sexton effectively conveyed the disputed property. We hold that it did.

Where a deed contains a conflict in the description of boundaries to land, references to fixed monuments and natural objects control over distances. *Bird v. Noon,* 9 Ariz. 37, 76 P. 592 (1904); 12 Am. Jur.2d *Boundaries,* § 67. Because adjacent boundaries are regarded as monuments, *Bird v. Noon, supra,* the discrepancy contained in the deed from Dameron, Jr., to Sexton which stated "105 feet" should be disregarded and the reference to the "Casady Tract" should control.

The Moores contend, however, that the location of the Casady Tract is uncertain and therefore one must revert to the distance of 105 feet to determine the location of the north boundary of Quality's property. The description in the deed which conveyed the Casady parcel stated:

"A portion of Block Twenty One (21) in the 'DAMERON PARK ADDITION' A subdivision in Yavapai County, Arizona, Beginning at A point One Hundred and Twenty Five Feet (125) South of the south east corner of Lot Six (6) in Bloch [sic] Seventee [sic] (17) . . ."

Examination of the assessor's map, which designates the above-described Casady Tract as Parcel 21, leads to the conclusion that Block 18 rather than Block 17 was intended as the point of reference for describing Parcel 21. In fixing the location of the boundary lines of land, all words and descriptions used in the grant must be harmonized and given effect if possible. 12 Am.Jur.2d *Boundaries*, § 2. Here, a reading of the entire description makes it obvious that Block 18 rather than Block 17 was intended as a point of reference; thus, we find no uncertainty in the description of the Casady Tract.

Having determined that the Dameron-Sexton conveyance included the disputed property, it follows that the subsequent tax sale and issuance of the Treasurer's Deed were invalid and did not effectively convey the property to the Moores' predecessor in interest, Kaiser. We must therefore consider whether Quality's quiet title action was barred by the statute of limitations contained in A.R.S. § 12–524.

A.R.S. § 12–524 provides:

An action to recover a lot located in a city or town from a person having a recorded deed therefor, who claims ownership and has paid the taxes thereon, shall be brought within five years after the cause of action accrues, and not afterward, provided that the person against whom the action is brought, by himself or his grantors, has claimed ownership thereof and has paid the taxes thereon for at least five consecutive years next preceding the commencement of such action.

■ Quality initially questions whether the disputed property constitutes a city "lot." It argues that the designation of the property as "Parcel 59" does not create a lot by legal description because the term "city lot" is generally interpreted as a parcel of land laid out by a subdivider.

Words contained within a statute are to be given their ordinary common meaning unless it appears from the context or otherwise that a different meaning is intended. *See, e.g., Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975); A.R.S. § 1–213. Examination of § 12–524 leads us to conclude that the term "lot" was not intended to have the narrow meaning urged by Quality. All that is necessary under the statute is that the person against whom the action is brought hold a recorded deed *purporting* to convey a city or town "lot" or, as the word is commonly defined, a parcel of land. *See* Webster's Third New International Dictionary, 1338 (1965). Here, the treasurer's deed purported to convey an unsold parcel of land in Block 21 designated as Parcel 59 by the county assessor. This was sufficient to bring the disputed property within the meaning of the statute.

Quality also argues that the "recorded deed" requirement is not satisfied since the Treasurer's Deed contained an inadequate description of the disputed property. The deed conveyed nothing, it is argued, because it specifically excepted Quality's parcel by referring to the Sexton deed, which, by application of the rule in *Bird v. Noon, supra*, included the disputed property. Additionally, Quality maintains that the Treasurer's Deed did not give notice to an individual searching the records by legal description that someone claimed an interest in the property.

■ The recorded deed requirement of § 12–524 is in the nature of a color of title

242

requirement. "It means a deed not void upon its face ... not that it is a conveyance, but that it purports to operate as a conveyance." *Sparks v. Douglas*, 19 Ariz. 123, 127, 166 P. 285, 287 (1917). A tax deed is sufficient to constitute color of title though it may be invalid. 3 Am.Jur.2d *Adverse Possession*, §§ 17, 117. However, in order for a tax deed to constitute color of title, it must describe the property sought to be conveyed with reasonable certainty. Annot. 38 A.L.R.2d 986, 1024 (1954). The purpose of the description requirement is to give notice of the adverse claim. *Larsen v. Cady*, 274 N.W.2d 907 (Iowa 1979). This form of notice is essential to § 12-524 since the statute does not require actual visible appropriation of land.

■ Although the foregoing rules may prevent a deed which fails to describe the property sought to be conveyed from constituting color of title, it is not required that the deed contain such a description that the land cannot be identified without reference to other records. *Mayor and Council of City of Athens v. Gregory*, 231 Ga. 710, 203 S.E.2d 507 (1974); *Redfearn v. Kuhia*, 50 Haw. 77, 431 P.2d 945 (1967). Thus, it has been held that where the description of property conveyed by a tax deed is ambiguous but nevertheless contains a clue or guide by which the proper description may be ascertained with certainty, extrinsic evidence may be considered to clarify the description of the land. *Curtis v. Bleck*, 215 So.2d 876 (Miss.1968).

■ It is undisputed that the Treasurer's Deed issued to Kaiser contained an imper-

fect description of the disputed parcel. However, the description also contains a reference to the assessor's parcel numbers. Examination of the assessor's map makes certain which property was intended to be conveyed since the parcel numbers are designated on the map. *Cf. Consolidated Motors, Inc. v. Skousen*, 56 Ariz. 481, 491, 109 P.2d 41, 45 (1941). Therefore, the Treasurer's Deed was sufficient to constitute color of title and satisfies the recorded deed requirement of § 12-524.

■ It is also undisputed that the Moores and their predecessor in interest claimed ownership and paid property taxes on the property for over five years immediately preceding the quiet title action. Quality maintains that it has also paid taxes on the property (a point of dispute between the parties), but this goes only to the validity of the tax deed as a conveyance and does not affect the operation of § 12-524. *See Nicholas v. Giles*, 102 Ariz. 130, 135, 426 P.2d 398, 403 (1967).

Because Quality did not bring its action within five years of the issuance of the Treasurer's Deed to Kaiser, its quiet title action was barred, and the Moores are entitled to full title to the property pursuant to A.R.S. § 12-527.*

The judgment of the Superior Court is reversed and this matter is remanded with directions to enter judgment quieting title to the property in favor of appellants.

STRUCKMEYER, C. J., and CAMERON, J., concur.

* A.R.S. § 12-527 provides: "When an action for recovery of real property is barred by any provision of this article, the person who pleads and is entitled to the bar shall be held to have full title precluding all claims."