HELENA MYRTLE MESSINA LESTER, *et vir,* and DADE COUNTY v. WALTER T. SCHUTT.

174 So. 583.
Opinion Filed May 21, 1937.

*J. Warren Kennedy* and *Hudson & Cason,* for Plaintiffs in Error;

*Herbert S. Sawyer, W. O. Mehrtens, Thos. McE. Johnston* and *Evans, Mershon & Sawyer,* for Defendant in Error.

DAVIS, J.—This was a suit in ejectment filed in October, 1927, by Walter T. Schutt against Helena Myrtle Messina Lester and G. W. Lester, her husband, and Dade County, a political subdivision of the State of Florida. The pleadings consist of a statutory declaration in ejectment prepared in accordance with Section 5044 C. G. L., 3236 R. G. S., and a plea of not guilty putting in issue the title to the lands in controversy, as provided in the same section. There was a trial and a judgment for the plaintiff which, upon writ of error, was reversed for a new trial because of .the undue delay of the trial court in so disposing of the controversy that the losing party could not interpose a timely motion for new trial. Lester v. Schutt, 113 Fla. 659, 152 Sou. Rep.

726. At the conclusion of all the evidence adduced at the second trial, the court directed a verdict in favor of plaintiff and from the resultant judgment this writ of error has been prosecuted.

The suit was brought for the recovery of land described in the one-count declaration as follows:

"Lot sixty-seven (67) of the Town of Lemon City, Florida, according to the map or plat thereof recorded in Deed Book D, page 509 of the Public Records of Dade County, Florida, being the same lot that is otherwise known as Lot 66, according to the map of Lemon City, recorded in Plat Book B at page 32 of the Public Records of Dade County, Florida, said lot having a frontage on Lemon Avenue of 50 feet and a depth of 100 feet, and lying on the west side of and adjoining the road now known as Dixie Highway or Little River Road."

Both the plaintiff and the defendants in this action trace their claims of title to the property from a common grantor, E. C. Harrington.

Plaintiff traces his claim to title to the property from E. C. Harrington by means of the following conveyances:

(1) Warranty deed from E. C. Harrington and wife to Monterville Hamilton, dated May 26, 1894, and recorded May 31, 1894, conveying: "Lot No. (67) sixty-seven of the Town of Lemon City, Florida, all as per plat of same on file in Circuit Clerk's office at Juno, Dade County, Florida, said lot fronting (50) fifty feet on Lemon Avenue and having a side front of (100) feet on a thirty-foot street."

(2) Warranty deed from E. C. Harrington, sole heir at law of Cornelia H. Keyes, deceased, joined by his wife, to Monterville Hamilton, dated December 27, 1918, and recorded March 4, 1919, conveying said property by the same description as above recited.

(3) Quit claim deed from E. C. Harrington, sole heir at law of Cornelia H. Keyes, deceased, joined by his wife, to Monterville Hamilton, dated April 25, 1921, and recorded May 11, 1921, conveying: "Lot 67 of the Town of Lemon City, Florida, according to the map or plat recorded in Book D of Deeds at page 509, on the public records of Dade County, Florida, being the same lot that is otherwise known as Lot 66, according to the map or plat of Lemon City recorded in Book B of Plats at page 32 of the Public Records of Dade County, Florida. Said lot having a frontage on Lemon Avenue of fifty feet and a depth of one hundred feet and lying west of the road now known as Dixie Highway, or Little River Road."

(4) Warranty deed from Monterville Hamilton and wife to R. Goethe dated May 11, 1921, and recorded May 31, 1921, conveying said property by the same description as that recited in paragraph numbered three above.

(5) Warranty deed from R. Goethe and wife to Josef Frenkel dated June 2, 1924, and recorded June 2, 1924, conveying said property by the same description as that recited in paragraph numbered three above.

(6) Warranty deed from Josef Frenkel and wife to Abraham Greenbaum dated February 11, 1925, and recorded February 12, 1925, conveying said property by the same description as that recited in paragraph numbered three above.

(7) Warranty deed from Abraham Greenbaum to Walter Schutt, plaintiff in this case, dated October 13, 1925, and recorded December 10, 1925, conveying said property by the same description as that recited in paragraph numbered three above.

The defendants trace their claim of title to the property by means of the following conveyances:

(1) Warranty deed from E. C. Harrington and wife to

Charles S. B. Moffat dated April 5, 1890, and recorded August 13, 1890, conveying among other lots, lot 66 "lying and being situated in the Town of Lemon City, Dade County, Florida, as shown by plat of same on file in Clerk's office at Juno, Florida."

(2) Warranty deed from Charles S. B. Moffat and wife to Helena Myrtle Messina dated July 26, 1890, and recorded September 8, 1890, conveying: "Lot sixty-six (66) in Lemon City, Dade County, Florida. Reference being had to E. C. Harrington's Plat of said City now on file in the Clerk's Office at Juno, Dade County, Florida. Said land being more particularly described as having a front of fifty (50) feet on Lemon Avenue, and extending back in a northerly direction one hundred (100) feet."

(3) By arbitration decision of April 8, 1927, Dade County acquired the interest of Helena Myrtle Messina Lester in and to the east 15 feet and 2 inches of Lot 66, Lemon City, Florida, according to White's resubdivision, which portion of said lot lies within the Federal Aid Highway.

Three plats or maps embracing the property were recorded in Dade County. They are as follows:

1. A Plat of the Town of Lemon City, Florida, was recorded January 21, 1890, in Deed Book D, at page 510.

2. A corrected survey of Lemon City was recorded June 20, 1890, in Deed Book D at page 509.

3. A Plat of Lemon City was recorded May 16, 1893, in Plat Book B, at page 32.

After all of the evidence had been introduced, counsel for plaintiff moved to strike from the record the certified copy of the plat recorded in Deed Book D, page 510, the deed from Harrington to Moffat and the deed from Moffat to Messina. Counsel also moved for a directed verdict in plaintiff's favor, moved to strike from the record all testi-

mony concerning any measurement from high or low water mark; and moved to strike from the record all testimony concerning the location of any property except as that location is designated by the deed itself, or by some other writing incorporated in said deed.

Thereupon the following proceedings were had:

"THE COURT: I am inclined to grant the motion.

"MR. KENNEDY: All of the motions, your Honor?

"THE COURT: All except the last one, and maybe the last one, too.

"(Thereupon counsel for the respective parties argued to the Court.)

"THE COURT: The motion is granted as to Exhibits B, C, and D of the defendants. D is deed from Harrington to Moffett. C is the deed from Moffett to Messina.

"(Thereupon a recess was taken until 2:00 o'clock P. M. of the same day, after which the following proceedings were had):

"THE COURT: Bring in the jury.

"(Jury returns into Court room.)

"THE COURT: I am going to instruct a verdict for the plaintiff. That will make it unnecessary to pass on your motion.

"MR. JOHNSTON: The Supreme Court has passed on the fact that you should submit to the jury the question of compensation.

"THE COURT: That will make it unnecessary to pass on the other motions, will it not?

"MR. JOHNSTON: Yes, sir."

Under these proceedings, the Court did strike from the record defendants' Exhibits B, C and D, being the Plat recorded in Deed Book D at page 510; the deed from Moffat to Messina and the deed from Harrington to Moffat.

The proceedings had after reconvening court at 2:00 o'clock did not in any wise rescind the action previously taken of striking these exhibits from the record. With these instruments stricken from the record of the case, the defendants had no evidence upon which they could base their claim to title to the proeprty. The claim of title relied upon by plaintiff then became the superior one of the two, and, under these circumstances, a directed verdict in favor of plaintiff became proper.

So the question to be determined is whether the trial court erred in striking these documents from the record. If it did not err therein, then there is no error to complain of, and the judgment must be affirmed. If there was error in striking them from the record, then we must consider whether, if those documents had been allowed to remain in evidence, there was such a total lack of evidence to sustain the defendants' claim of title to the property as to warrant the court in directing a verdict for the plaintiff.

The deed from Harrington to Moffat was dated April 5, 1890, and recorded August 13, 1890. The deed from Moffat to Messina was dated July 26, 1890, and recorded September 8, 1890. At the time each of these deeds were recorded, there were on file two plats of the Town of Lemon City, recorded in Deed Book D, at pages 510 and 509, respectively, although at the time the first named deed was made there was on record only the former plat.

Since there was only the plat recorded in Deed Book D, page 510, on record at the time the deed from Harrington to Moffat was made, it is reasonable to assume that the parties knew only of that plat and made the deed with reference to it. See: Thrasher v. Royster, 187 Ala. 350, 65 Sou. Rep. 796. Therefore the land, if it can be located by any plat at all should be located by that plat. Lot 66 was

described in the deed from Harrington to. Moffat as lying and being situated in the Town of Lemon City, Dade County, Florida, as shown by plat of same on file in the Clerk's office at Juno, Florida. This could reasonably refer only to the plat filed in Deed Book D, at page 510, in the absence of a showing that some other plat was intended to be referred to.

The plat recorded in Deed Book D, at page 510, was objected to on the grounds that it was insufficient to enable a surveyor by the use thereof to locate Lot 66 upon the earth's surface; it was insufficient to enable a surveyor to locate any land on the earth's surface; it sets forth no point of departure so as to enable a surveyor to survey land therefrom; and it contains no monument or monuments which may be used by a surveyor to locate any lot 66 thereon.

Even where a plat is so defective as not to be entitled to record, but according to it deeds have been issued for years, it is admissible as an instrument referred to. Pere Marquette R. Co. v. Graham, 150 Mich. 219, 114 N. W. Rep. 58. If such map is inaccurate, property conveyed according to it may be identified by parol evidence. Cleveland v. Choate, 77 Cal. 73, 18 Pac. Rep. 875; Skelton on Boundaries & Adjacent Properties, p. 9, Sec. 14.

As we have pointed out, all parties to this controversy claim through E. C. Harrington as the common source of title. There is testimony in the record that Harrington bought ten acres of land, subdivided it, called it Lemon City, put a street through it and called the street Lemon Avenue. The plat filed January 21, 1890, purports to be a "Plat of Town of Lemon City" and comprehends, among others, lot number 66 which is shown as fronting "Lemon Avenue" and an unnamed intersecting street.

The evidence shows that for many years after the 1890

plats were recorded, that there was, within the bounds of Harrington's tract, in the community identified in the evidence as "Lemon City" a street known as "Lemon Avenue." There is also evidence that the unnamed intersecting street hereinabove referred to was known as Little River Road and that both "Lemon Avenue" and said "Little River Road" are identifiable by extraneous evidence. The evidence further shows that lot 66 was conveyed by Harrington to one Moffat from which plaintiffs in error claim title by mesne conveyances, and that such conveyances by Harrington to Moffat was made by Harrington by definite reference to a recorded plat at a time when there was no other plat than the plat of Jan. 21, 1890, or similar plat, of record to which the conveyance could have reference.

On the other hand, the evidence shows that plaintiffs below, defendants in error here, claim through a later deed executed by the identical grantor Harrington with reference to the plat recorded subsequently on May 16, 1893. So the real contest between the parties is whether or not there is sufficient evidence to go to a jury on the question of whether or not the land described in the earlier Harrington conveyance made according to the 1890 plat can be located by a surveyor after applying to his survey the rules of surveying in the light of such available extrinsic evidence as may be adduceable to aid such surveyor in locating the land that has been conveyed according to the 1890 plat.

Streets adjoining lots shown on a plat are capable of being used as monuments by which surveyors may locate the lots on the earth's surface, because such monuments, though erected by man and hence artificial, have the characteristics of natural monuments in that they have permanence, identity and visibility. Skelton on Boundaries and Adjacent

Properties, Sec. 129, page 116; Hoffman v. City of Port Huron, 102 Mich. 417, 60 N. W. Rep. 831.

The 1890 plat to which the first Harrington deed is intended to have reference, does not purport to have been drawn by an engineer, but is evidently a map gotten up for the purpose of selling lots in the locality covered by it. It is entitled "Plat of Town of Lemon City" situated on Biscayne Bay near Little River, Dade County, Florida, and has been of record more than thirty years. It contains two lots 66. One of them is located on Tarepin Street and Little River Avenue in a portion of the plat under the name of "Mataw's Addition." The other lot is located on Lemon Avenue and Dorcas Avenue with an unnamed side street running by the third side of said lot. The latter lot numbered "66" is situate on that portion of the plat under the name "Lemon City."

The deed from John Saunders to E. C. Harrington, by which Harrington acquired title to a number of lots placed this lot in the territory known as Lemon City, immediately south of the east and west center line of Section 18 in Township 53 South, Range 42 East.

It is contended that the 1890 plat does not contain sufficient indications of dimensions of the lots for a surveyor to determine the proportions of them. It is also contended that the plat fails to contain any proper point of departure so that the lot can be located upon the earth's surface.

It can be seen from the plat that Lot 66 in Lemon City is located on Lemon Avenue and Dorcas Avenue and on an unnamed street. Testimony was adduced that what was formerly known as Lemon Avenue is now known as 61st Street; that what was formerly the unnamed street, has been known at various times as Little River Road, Dixie Highway, Biscayne Boulevard and Federal Aid Highway. There

was testimony to the effect that this road was 30 feet wide when the plat was made; but it was later widened because Dade County acquired a strip 15 feet and 2 inches wide off the east side of lot 66. There was also testimony that lot 66 was located on the west side of this 30-foot street; that the north and south center line of the section ran down the center of the road, and that the north and south center line of the section is now 35 feet distant from the east side of lot 66.

There was testimony that the east and west center line of the section ran along the northern boundary of Lemon City, and that 10-foot alley called Dorcas Avenue was not included in Lemon City but was north of the east and west center line of the section; that the distance from the east and west center line of the section to Lemon Avenue was 100 feet; that the distance from the east and west center line of the section to the center of Lemon Avenue was 121.01 or 121.28 feet; and that Lemon Avenue was 42.56 or 42.58 feet wide.

From these facts the jury might determine that the length of the lot was fixed at 100 feet. Mrs. Lester testified that she owned lot 66 and the next two adjoining lots, the three having a total width of 135 feet. Dade County acquired the east 15th feet 2 inches off lot 66 for street purposes. Adding this to the 135 feet would give the three lots a combined width of 150 feet or an average width of 50 feet each. This would place the width of lot 66 at 50 feet before Dade County acquired the 15 foot 2 inch strip off the east side of it, and 35 feet after the acquisition.

The deed from Harrington to Moffat described Lot 66 as lying and being situated in the Town of Lemon City, Florida, as shown by the plat of same on file in the Clerk's office at Juno, Florida. As we have pointed out, this could

reasonably have reference to no other plat than that one recorded in Deed Book D, at page 510, which was the only plat of Lemon City on file at the time the deed was made. This deed should have been allowed to remain in evidence, together with the plat to which it referred, so that the jury might have considered them together with all other evidence in the case.

The next deed in the defendants' claim of title to the property was the deed from Moffat to Messina, which described the property as lot 66 in Lemon City, Dade County, Florida—reference being had to E. C. Herrington's Plat of said city now on file in the Clerk's office at Juno, Dade County, Florida. Said land being more particularly described as having a front of fifty feet on Lemon Avenue and extending back in a northerly direction one hundred feet.

At the time the above mentioned deed was made there were two plats of Lemon City on file, the first one already named and the other which was named the "Corrected Survey of Lemon City," but which erroneously, as admitted by plaintiff, placed lot 67 where lot 66 should have been. The deed from Moffat to Messina must have had reference to the same lot 66 that was conveyed by the deed from Harrington to Moffat and must have had reference to the same plat to which the latter conveyance had reference, in the absence of an express intention to the contrary appearing in the deed itself. Liddon v. Hodnett, 22 Fla. 442, text p. 454.

At the foot of Lemon Avenue between the last numbered lot and Biscayne Bay, on the right side of Lemon Avenue are the figures 111 x 210. At the same place on the plat, on the left side of Lemon Avenue are the figures 66 x 210. A jury in considering these figures would reasonably be au-

thorized to infer that since the figure 210 was used on both sides of Lemon Avenue, that 210 feet was the distance from that point to the shore line, or high or low water mark of Biscayne Bay. Then the jury might reasonably infer that the figures 66 and 110 were the respective lengths of the lots on the opposite sides of Lemon Avenue. On Lot No. 3, located on Lemon Avenue, are the figures 50 x 66. If the jury reasonably inferred that the figure 56 was the length of the lots on the left side of Lemon Avenue, then the figure 50 might reasonably be taken to be the width of those lots; and such might also be assumed to be the width of the lots on the opposite side of Lemon Avenue, where lot 66 is located.

Thus from the plat the jury might locate lot 66 on Lemon Avenue, and find its dimensions at that time to be 111 x 50 feet, provided there was competent evidence before them warranting them in finding these conclusions of fact. However, if it be true that the lot was only 100 feet long instead of 110 feet, as might be inferred from the figures on the plat, that fact can be appropriately shown by showing the location of streets that have been opened in conformity to a plat and have been long acquiesced in as definitely located monuments, fixing the location of the lots and blocks contiguous thereto or fronting thereon. See Hillside Cotton Mills v. Bartley, 156 Ga. 271, 119 S. E. Rep. 404; Skelton on Boundaries & Adjacent Properties, page 218, Sec. 219.

Taking into consideration all of the foregoing facts and circumstances in the defendants' claim of title to the property, it seems to us that the trial court was not justified in striking from the record the plat of Lemon City, recorded in Deed Book D, at page 510, or the deed from Harrington to Moffat, or the deed from Moffat to Messina. He was

consequently not justified in directing a verdict in favor of plaintiff.

It appears that the evidence proffered and that should have been received, is sufficiently conflicting for the jury to be permitted to decide, under proper instructions from the court, which of the two claims of title to the property is in fact the superior one.

Whether plaintiff's claim of title to the land has been sufficiently proven, in the light of the conflicting claims, we do not decide, that being a question for determination by a jury, after hearing all of the evidence, and receiving proper and adequate instructions for their guidance from the Court.

For the error committed in striking this evidence from the record as complained of in the amended assignments of error which we have allowed to be filed, the judgment below ought to be and is hereby reversed for a new trial.

Reversed and remanded.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., not participating.