675 P.2d 824

**R. Jerrell GLENN, Plaintiff-Appellant, Cross-Respondent,**

v.

**Fermin GOTZINGER, Ronald Gotzinger, Dave Wilson and Aaron Wilson, a Partnership, doing business as Cross O Ranch, Defendants-Respondents, Cross-Appellants.**

**No. 13862.**

Supreme Court of Idaho.

Jan. 30, 1984.

Richard B. Eismann and Daniel Thomas Eismann, Homedale, for plaintiff-appellant and cross-respondent.

William B. Taylor, Jr., Grangeville, for defendants-respondents, cross-appellants.

DONALDSON, Chief Justice.

The plaintiff-appellant, R. Jerrell Glenn (Glenn), was the owner of a large herd of cattle grazing on leased range near Reno, Nevada. In February of 1976, Glenn advertised in an Idaho newspaper to find land to relocate his cattle. The defendants-respondents, all partners of "Cross O Ranch," operate a cattle ranch in Idaho. One of the partners saw the advertisement and contacted Glenn. Glenn met the partners and viewed their ranch on February 24, 1976. On March 2, 1976, Fermin Gotzinger (Gotzinger), the senior partner of Cross O Ranch, flew to Nevada to view Glenn's cattle. Glenn prepared a handwritten document (the Reno agreement) setting forth the terms and conditions under which his cattle would be placed on Cross O Ranch. On March 3, Glenn and Gotzinger, acting on behalf of the partnership, executed the Reno agreement. Before the agreement was executed, however, Glenn added the following language: "We agree to sign an agreement with this intent after it has been checked with an attorney."

Glenn took the Reno agreement to an attorney in Nevada who suggested that Glenn contact an Idaho attorney. Glenn then took this agreement to an Idaho attorney who prepared a formal document. However, this formal document was not identical to the Reno agreement. Glenn signed the document and forwarded it along with a copy of the Reno agreement to Gotzinger. On or about March 22, 1976, Gotzinger received the document and took it to his attorney in Grangeville. At Gotzinger's request, his attorney made several material changes in the formal document. Gotzinger then signed this revised document on behalf of the ranch but did not deliver it to Glenn until November 16, 1976.

Between March 22, and July 6, 1976, the parties agreed to ship Glenn's cattle to the ranch. During this time, Glenn inquired on several occasions about the contract he had sent to Gotzinger. Each time Glenn was told the document was still with Gotzinger's attorney. After Glenn received the contract back from Gotzinger on November 16, 1976, he waited for an opportunity to discuss the changes made by Gotzinger's attorney with Gotzinger personally. The parties met on December 30, 1976, and a dispute arose as to the terms of their agreement. This dispute led to the filing of this law suit.

The trial court, sitting without a jury, examined the three different agreements involved herein and found that no contract had been formed between the parties, apparently because there had never been a meeting of the minds. The trial court went on to conclude that Glenn had been damaged in the amount of $26,601.25, due to the defendants' inadequate care and management of the cattle which caused excessive death loss and a decrease in the value of the remaining cattle. The trial court then reduced these damages by $21,599.60 —the amount which the trial court determined to be the reasonable value of defendants' services. Therefore, Glenn received a net award of $5,001.65.

Glenn appealed, and defendants filed a notice of cross-appeal, from the trial court's decision. However, the defendants have expressly waived their right to pursue the cross-appeal. Therefore, the sole issue presented on appeal, as stated by appellant is: "Did the trial court err in deciding that the handwritten agreement [i.e., the Reno agreement] executed by the parties was not a binding contract?"

We have previously stated: "Generally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts." *Shields & Co. v. Green,* 100 Idaho 879, 882, 606 P.2d 983, 986 (1980); *see Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 643 P.2d 100 (1982); *Segura v. Molycorp, Inc.,* 97 N.M. 13, 636 P.2d 284 (1981); *O'Hara v. Hall,* 628 P.2d 1289 (Utah 1981); *In re Estate of Richardson,* 11 Wash.App. 758, 525 P.2d 816 (1974). In this particular case, the trial court was sitting as the trier of fact and made various findings in the course of its thirty-two page opinion. Those findings of fact will not be set aside

unless they are clearly erroneous, and due regard will be given "to the opportunity of the trial court to weigh conflicting testimony and to judge the credibility of witnesses." *Javernick v. Smith*, 101 Idaho 104, 106, 609 P.2d 171, 173 (1980); *see* I.R.C.P. 52(a).

The trial court heard testimony from both Glenn and Gotzinger in regards to their intent, and the circumstances surrounding the signing of the Reno agreement. In addition, the court heard testimony from Fermin Gotzinger, which was corroborated by Ronald Gotzinger, as to a conversation between Glenn and Fermin Gotzinger at which time Gotzinger informed Glenn of his dissatisfaction with the contract prepared by Glenn's attorney. Gotzinger further testified that Glenn agreed to particular changes which Gotzinger wanted to make. The court also had before it copies of the Reno agreement, the agreement prepared by Glenn's attorney, and the agreement prepared by Gotzinger's attorney.

■ It was from this evidence that the trial court found that "the parties failed to reach an agreement during the year 1976, involving all the essential terms and conditions of this cattle transaction." This finding is based on substantial, and competent, though conflicting, evidence and, therefore, will not be set aside on appeal. I.R.C.P. 52(a); *Nezperce Storage Co. v. Zenner*, 105 Idaho 464, 670 P.2d 871 (1983).

Glenn contends that the trial court's finding was based on the final sentence of the Reno agreement which states: "We agree to sign an agreement with this intent after it has been checked with an attorney." Consequently, Glenn asserts that the finding of the trial court is contrary to a statement this Court made in *McCandless v. Schick*, 85 Idaho 509, 516, 380 P.2d 893, 896 (1963): "The mere intention to reduce an informal agreement to writing, or to a more formal writing, *is not of itself sufficient* to show that the parties intended that until such formal writing was executed the parol informal contract should be without binding force." (Emphasis added.) However, Glenn has failed to note that the trial judge did not base his finding *solely* on the final sentence of the Reno agreement. The trial court made it clear that his finding was also based on the fact that the contract prepared by Glenn's attorney contained a number of differences from the Reno agreement. It was this fact, in conjunction with the last sentence of the Reno agreement, that led the trial court to conclude that "even Glenn did not consider the Reno handwritten document the last or final expression of their agreement." Therefore, the trial court's finding is not contrary to our statement in *McCandless* and we affirm.

The judgment of the district court is affirmed.

Costs to respondent.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

McFADDEN and SCOGGIN, JJ., pro tems., concur.