691 P.2d 1236

Carmen RANKIN, Plaintiff-Appellant,

v.

Jess Wayne RANKIN, Defendant-Respondent.

No. 14736.

Supreme Court of Idaho.

Dec. 7, 1984.

---

**622**

Jordan P. Smith, Salmon, for plaintiff-appellant.

Jess W. Rankin, pro se.

SHEPARD, Justice.

This is an appeal from a decision of the district court, which reversed in part a decision and judgment of the magistrate court in a divorce action in which the principal issue was the categorization of property as either community or separate. We affirm as modified and remand for further proceedings.

The facts relevant to the principal issue presented in this appeal are substantially without question. Rather, it is the inferences that flow from these facts and the legal conclusions to be drawn therefrom which are in dispute.

The parties met in early 1968, while respondent Jess Rankin was visiting friends in Mexico. Appellant Carmen Rankin, a Mexican, was working as a housekeeper for friends of Jess Rankin. She was 30 years old with three minor children and was approximately six months pregnant with a fourth child. She was without any resources whatsoever and had only the equivalent of a second grade education. She had at that time and continues to have little ability, either written or oral, in the English language. At trial, proceedings were conducted through an interpreter.

At the time of the marriage, respondent Jess Rankin was 64 years old and had essentially retired from a career as a construction worker throughout the western United States. He had accumulated a substantial amount of property, both real and personal. At the time of the marriage, he was receiving a small monthly income from a union pension fund, was receiving social security benefits, had several bank accounts, and was receiving moneys from the contract sale of properties. He also owned property in Forks, Washington and a ranch known as the Williams Creek property in Lemhi County, Idaho.

Following the marriage, the parties moved to the ranch at Williams Creek. Appellant's fourth child was stillborn. However, the remaining three children, ages fifteen months, four, and seven, ultimately came to live with the parties, assumed the name Rankin (although never formally adopted), and were raised by the parties. There was evidently, during much of the time of the marriage, considerable love and affection between the children and Jess Rankin, and in part such continues, although the dissolution of the marriage resulted from a quarrel between Jess Rankin and the then 14 year old youngest son, during which each was wounded by simultaneous shooting.

One of the issues during the divorce was Jess Rankin's treatment of Carmen Rankin during the approximately 12 years of the marriage. The record is replete with conflicting testimony as to physical, verbal and mental abuse, or the lack thereof. There is also conflicting testimony of the poverty level existence in which Jess Rankin forced the family to live. Fol-

lowing trial, the magistrate court specifically refused to find that Jess Rankin had acted in a manner of extreme cruelty, but rather he granted a decree of divorce on the basis of irreconcilable differences. Upon appeal to the district court, that ruling of the magistrate was upheld. We affirm. The trial court is the arbiter of conflicting evidence; in the absence of clear abuse of discretion, and where substantial competent evidence supports such ruling, it will not be disturbed upon appeal. *Circle C. Ranch Co. v. Jayo,* 104 Idaho 353, 659 P.2d 107 (1983); *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982); I.R. C.P. 52(a). While this Court might have reached a contrary result, we are reminded that the evidence is presented to us by way of a cold record, and we have not had the opportunity of the magistrate to observe in person the witnesses and the parties. Although the evidence militating against the finding of extreme cruelty was largely the testimony of Jess Rankin denying the testimony of Carmen Rankin and her children, we cannot say that such evidence was insufficient to sustain the ruling of the magistrate.

The remaining issue which we deem of substance is the magistrate's characterization of property as being either separate or community. The magistrate held that separate property funds and community property funds "were so commingled in such a way that it is impossible to ascertain and identify each source, that the result is that the whole [all property, both real and personal] shall be treated as community property." The magistrate court then determined that the community property of the parties was of a value of $410,000, against which respondent Jess Rankin should be given credit of $75,000, representing his separate property funds expended on the community property. Thereafter, the magistrate awarded property to appellant Carmen Rankin in the amount of approximately $167,000, and property to respondent Jess Rankin in the amount of approximately $250,000 (including the $75,000 credit for expenditure of separate property funds). From that decision, an appeal was taken by Jess Rankin to the district court. The district court reversed that part of the magistrate decision characterizing the property as being all community. The district court noted that, during the time of the marriage, there was no income which could properly be found to be community property, other than perhaps interest, rents or profits from Jess Rankin's separate property, and that such funds being placed in bank accounts together with pension and social security income was the only commingling demonstrated in the record. The district court then held that there were no community funds which could be demonstrated to exist that could have possibly been utilized to make the substantial investments in the real property held at the time of the divorce. Hence, the district court reversed that portion of the magistrate's decree and judgment and remanded it to the magistrate court for further proceedings, which were to include the isolation of that relatively small amount of funds which could properly be characterized as community. No such further proceedings in the magistrate court took place, since appellant Carmen Rankin filed this appeal from the decision of the district court.

It is clear, and the evidence is uncontroverted, that at the time of the marriage, respondent Jess Rankin had approximately $14,000 in various bank accounts; owned the Williams Creek ranch, which was sold in 1970 for $35,000; owned real estate at Forks, Washington, which was sold in 1968 for $15,000; and had sold real estate in Reno, Nevada on a contract for $11,500. Additionally, he owned fourteen cows, one bull, and six horses. The magistrate court made such a finding, and it is not disputed on this appeal. Clearly, that property was and remained the separate property of respondent Jess Rankin.

The evidence is also clear and uncontroverted that during the 12 years of the marriage neither respondent Jess Rankin nor appellant Carmen Rankin was employed, nor did the ranch properties, with the possible exception of some cattle and

horses, produce any appreciable income. There is testimony that one of the ranches produced rental income of approximately $300 per year. We view the evidence as being clear that during the course of the marriage the parties lived on Jess Rankin's union pension moneys and social security moneys. Following the marriage, Jess Rankin received social security benefits and was able to secure social security benefits for Carmen Rankin and each of the three minor children. As noted by the district court, Carmen Rankin indeed did function as a typical ranch wife in what was, in effect, a servitude position, taking care of the household. There is, however, a total lack of any showing that such labors enhanced or created any community interest in the separate property of Jess Rankin.

After the marriage, the Williams Creek ranch was sold and the parties moved to the 160-acre Challis Creek ranch. That property had been purchased for $48,000. In 1972, approximately 50 acres of that property was sold for $28,000. In 1973, the Mill Creek property was purchased for $24,000, and it sold in 1976 for $56,000. In 1975, with another person, the Pahsimeroi Ranch was purchased for $80,000. Later, that person's interest was bought out.

During the course of the marriage, Jess Rankin handled all financial and banking matters. It is doubtful that, with her very limited education and her lack of command of English, Carmen Rankin was competent to handle any banking transactions; at any rate, she was not authorized to do so. After the marriage, Jess Rankin deposited into his separate bank account not only the moneys received from his real estate transactions and the moneys received from his contract sales, but also his union pension fund payments, the social security benefits, moneys credited as interest on his various bank accounts, and such moneys as might have been received from sales of livestock, crops and rental of property.

The magistrate court held that such above procedure constituted a commingling of separate and community funds such that it was impossible to trace the sources of

either community or separate property, and hence all moneys constituted community property and inferentially created a community property interest in the ranch properties which had been purchased during the time of the marriage. Given the state of the record, the district court disagreed and reversed that conclusion of the magistrate. We agree in part and disagree in part with the decision of the district court.

■ The "Challis Creek" Ranch was purchased for $48,000 approximately one year after the marriage. Three years later 50 acres of that ranch was sold for $28,000. The trial judge found that at the time of the divorce the remaining 100 acres had a value of $243,000. While we deem that asserted value to be questionable, it is immaterial because of our holding that that ranch constituted the separate property of Jess Rankin. That ranch was purchased with the separate property of Jess Rankin as a down payment and obviously purchased on the basis of his credit. As before noted, Carmen Rankin brought absolutely nothing to the marriage and the record is devoid of any indication that the enhancement in value of that property resulted from anything other than inflationary factors and there is no showing that community labor efforts or community money were used to purchase the property or enhance the value of the property. It is true, as asserted by appellant, that property acquired during the course of the marriage is presumptively community property. The testimony of respondent Jess Rankin, although somewhat tenuous, is nevertheless uncontradicted, i.e., that the Challis Creek ranch was purchased with his separate property assets consisting of moneys earned by him prior to the marriage and moneys obtained through the sale of his separate property assets owned by him prior to the marriage. That uncontradicted evidence, taken together with the showing that there were simply no assets of the community which could have been used to purchase the ranch, clearly rebuts the presumption of community property. As before noted, neither of the parties had em-

ployment during the course of the marriage and, at the very best, the community property which might have resulted from the interest on bank accounts, the sale of livestock, and money from rental and crops, could not have exceeded $2,000 to $3,000 per year. Neither the social security income nor the union pension payments can be considered as anything but the separate property of respondent Jess Rankin.

Hence, we hold that the magistrate's decision denominating the Challis Creek ranch as community is erroneous and the decision of the district court holding the Challis Creek ranch to be the separate property of Jess Rankin was correct.

■ On the other hand, we hold that the magistrate's decision holding the Pahsimeroi ranch to be community property was correct and the district court holding that ranch to be the separate property of Jess Rankin is erroneous. The Pahsimeroi ranch was not purchased until seven and one-half years after the marriage, and we hold that the presumption that property acquired during the marriage is community property has not been rebutted insofar as the Pahsimeroi ranch is concerned. We hold that the magistrate's finding that the Pahsimeroi ranch was community property is supported by some substantial evidence, and hence that ruling of the magistrate will be affirmed and reinstated, and the ruling of the district court reversing the magistrate's decision is in turn reversed as to the Pahsimeroi ranch property.

Given the state of the record, the time which this matter has been in litigation, and the ages and circumstances of the parties, justice would be better served by a reversal and remand of this cause with specific instructions for the entry of judgment. *See* I.C. § 32–714, which provides: "The disposition of the community property and of the homestead, as above provided, is subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court."

It is therefore the order of this Court that the cause is reversed and remanded for entry of judgment by the magistrate court in accordance herewith, *i.e.,* (1) the Challis Creek ranch shall be set over to the defendant-appellant Jess Rankin as his sole and separate property; (2) the Pahsimeroi ranch shall be adjudged to be the community property of Jess and Carmen Rankin; the magistrate shall cause the Pahsimeroi ranch to be revalued and upon motion shall enter an order permitting one party to purchase the other party's interest for one-half of the appraised value, or requiring a sale of the ranch to third parties and an equal division of the proceeds or a partition of the ranch property between the parties; (3) judgment shall be entered awarding plaintiff-appellant Carmen Rankin cash in the amount of $18,000, $10,000 of which shall be paid within thirty days of the entry of judgment from the moneys held in the Custer County savings account and $8,000 of which shall be paid within one year from the date of the judgment, which payment shall be secured by an equitable lien upon the Challis Creek ranch. In all other respects, the decision and judgment of magistrate court is affirmed.

The cause is affirmed as modified and remanded to the magistrate court for entry of judgment in accordance with this opinion.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.